## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**POINT-O-WOODS, LLC**                                                              **PLAINTIFF**

**V.**                                      **CIVIL ACTION NO. 2:22-cv-54-KS-MTP**

**STATE FARM FIRE & CASUALTY**
**COMPANY**                                                            **DEFENDANT**

## **MEMORANDUM OPINION AND ORDER**

This cause comes before the Court on Plaintiff's Motion to Compel Appraisal [14]. The Defendant has responded [16], and Plaintiff filed its reply [19]. Having reviewed the parties' submissions, the record in this matter and the relevant legal authority, and otherwise being duly advised in the premises, for the reasons that follow, the Court finds the motion is not well taken and will be denied without prejudice to refiling should future circumstances so warrant.

## I. BACKGROUND

This case arises from damage to the Point-O-Wood's apartment complex allegedly caused by Hurricane Zeta in October 2020. There are eleven structures in the complex for which Plaintiff claims damage. [15] at p. 2. In the policy of insurance at issue between the parties, there is a section under Property Loss Conditions titled "Appraisal," which states:

> If we and you disagree on the value of the property or the amount of the loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. Each party will notify the other of the selected appraiser's identity within 20 days after receipt of the written demand for an appraisal. The two appraisers will select an umpire. If the appraisers cannot agree upon an umpire within 15 days, either may request that selection be made by a judge of a court having jurisdiction.

> The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit
>
> their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> (1)  Pay its chosen appraiser; and
> (2)  Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

[1] at ¶ 17; [14-1] at p. 67. While Plaintiff acknowledges in its Complaint that Defendant has paid some benefits relating to the loss, Plaintiff also alleges that it has demanded an appraisal and appointed its appraiser as required under the policy, but Defendant refuses to submit the claim to appraisal to determine the amount of the loss. [1] at ¶¶ 14, 18-20. Plaintiff also alleges in its Complaint that there is no applicable exclusion and that the claim involves no coverage issues. [1] at ¶¶ 11, 21. In its motion, Plaintiff asserts that it provided Defendant with information that Defendant's calculation of the amount of the loss is significantly less than the amount calculated by Plaintiff, and as such there is a disagreement as to the amount of the loss. [15] at p. 3.

Defendant argues, on the other hand, while admitting there was a compensable claim and some compensation has been paid,[1] that invoking the appraisal clause is not appropriate because this dispute is not over the value of the loss, rather it involves a dispute over the scope of the claimed damages. [17] at p. 1. Defendant urges that there are causation issues in that its engineer contends that some of the damage was caused by defects in installation or from the shingles being in an aged and weathered condition. [17] at p. 2; [17-2]. Defendant maintains that this damage would fall under certain exclusions for "wear and tear" and "[r]ust or other corrosion, decay,

---

[1] [17] at p. 2 (citing its Answer at [3]).

deterioration." *Id.*; [17-4] at p. 3.[2] Defendant's engineer will further opine that some damage was caused by deferred maintenance of the complex and storm events over the life of the complex and not from Hurricane Zeta. [17-2]. Defendant contends that these opinions create coverage disputes about the cause and extent of the loss and not the value of an agreed upon scope of damage. *Id.*

Based on the issues as phrased by the parties, whether or not Plaintiff is entitled to invoke the appraisal process turns on the true nature of the dispute. In other words, is there truly a dispute over the amount, i.e., value of the loss, or rather is the dispute over the scope of the loss, i.e., some portion of the loss not being subject to coverage at all.

## II. DISCUSSION

While it is true that parties may be compelled to submit to the appraisal process,[3] "under Mississippi law [] the purpose of an appraisal is not to determine the cause of loss or coverage under an insurance policy; rather, it is 'limited to the function of determining the money value of the property' at issue." *Jefferson Davis Cnty. Sch. Dist. v. RSUI Indem. Co.*, No. 2:08-cv-190, 2009 WL 367688, at *2 (S.D. Miss. Feb. 11, 2009) (quoting *Munn v. Nat'l Fire Ins. Co.*, 115 So. 2d 54, 55 (Miss. 1959)). The situation in the *Jefferson Davis County School Board* case, which was filed

---

[2] The "Section I: Exclusions" portion of the policy states, in relevant part:
  We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these: . . .
  l.   Other Types Of Loss
     (1)  Wear and tear;
     (2)  Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property       that causes it to damage or destroy itself;

[3] Here, Plaintiff seeks to have the insurance company submit to an appraisal, whereas in other cases it is the insurer that seeks to have the insured submit to an appraisal. *See, e.g., Burrell v. Allstate Prop. & Cas. Ins. Co.*, No. 3:13-CV-493, 2014 WL 48512731 (S.D. Miss. Sept. 29, 2014); *Edwards v. Guideone Mut. Ins. Co.*, No. 4:09-cv-35, 2010 WL 1416473 (S.D. Miss. Apr. 7, 2010)

in this Court, is quite similar to the case at hand. In the *RSUI* case, the parties were evaluating damage caused by Hurricane Katrina. The plaintiff demanded submittal to the appraisal process, but the insurer argued that appraisal was not appropriate as there remained disputes involving coverage and causation questions. The Court agreed with the insurer because the record showed that the parties disagreed whether certain items of damage were actually caused by the hurricane or whether there was preexisting damage, as well as whether certain allegedly damaged items (such as the roof) actually existed prior to the hurricane. *Id.* at *2. The same is true here.

In this case, Defendant State Farm has submitted portions of its expert's opinions in this matter that supports its position that certain exclusions in the policy apply, contrary to Plaintiff's assertion that there are no coverage issues. There is also a dispute as to whether Hurricane Zeta caused certain portions of the damage. As such, just as in the *RSUI* case, "[t]his court must first determine the Policy's coverage of the losses and Defendant's liability for those losses, before the matter can be submitted for appraisal of the value of those losses." *Id.*; *Pearl River County Sch. Dist. v. RSUI Indem. Co.*, No. 1:08-CV-364-HSO-JMR, 2009 WL 2553267, at *1 (S.D. Miss. Aug. 17, 2009) (denying appraisal and relying on *Jefferson Davis County School District v. RSUI*); *see also Smith v. State Farm Fire and Casualty Co.*, No. 1:13-cv-572, 2014 WL 11514958 (S.D. Miss. June 4, 2014) (denying appraisal due to "factual disputes as to the cause of the loss, which necessarily lead to legal disputes as to coverage" and relying on the two prior *RSUI* cases).

Plaintiff urges in its reply that compelling the appraisal would be more efficient because the claim could be completely resolved through appraisal. [19] at p. 2. However, such argument misses the mark because an appraisal cannot be used to determine causation or coverage—only value. *See Munn*, 115 So. 2d at 55. If there is no agreed upon scope, i.e., the parties agree that certain damage will not be appraised because it was not caused by the hurricane or vice versa, then

determining value at this point is an exercise in futility. The parties are not fighting over simply "how much will be paid" for a specific injury/damage. The "how much will be paid" will be determined once the full scope of the damage covered under the policy is determined.

Plaintiff cites to *Kuehn v. State Farm Fire & Cas. Co.,* No. 1:08-cv-577, 2009 WL 2567485 (S.D. Miss. Aug. 17, 2009), among numerous other cases, for the proposition that coverage or causation may be litigated after an appraisal. [19] at p. 3. However, the Court disagrees. *Kuehn* involved enforcement of an appraisal that had already taken place. The parties (and appraisers) agreed upon a scope, which did not include the damages purportedly not covered under the policy (storm surge damage). *Kuehn*, 2009 WL 2567485 at *3. It was in response to State Farm's argument that the appraisers exceeded their authority in determining the scope of the damage to include, thereby determining causation, that the Court explained that such was not the case. *Id.* at *5-6.

In *Kuehn*, State Farm asserted that its appraiser had been instructed to appraise both the wind damage (covered peril) and the damage from storm surge flooding (non-covered peril), and because the appraisal panel in fact appraised wind damage only, the panel thereby determined causation and so ran afoul of the holding in *Munn*. *Id.* at *5. However, the Court explained,

> *Munn* stands for the proposition that the refusal of an appraisal panel to include a disputed item of property (in that case a wall was seen to be leaning) in its appraisal was sufficient to require the appraisal be done again and the disputed item be included. Following *Munn*, where there is a dispute concerning the items of property that were damaged by a covered peril and should, therefore, be part of the appraisal, that coverage dispute—i.e. the question whether the damage to the disputed item is a covered loss—is outside the authority of the appraisal panel to decide and is subject to litigation.

*Id.* at *6. This explanation does not support the proposition that a plaintiff is entitled to an appraisal of all of the damage and the parties will sort out what portions are covered in litigation afterward. In fact, the issue in *Munn* itself was that the property owner asked the appraisers to include the

5

leaning wall because he contended it should be included, but the appraisers refused because they themselves determined that the damage was not caused by the windstorm peril, which the court found exceeded their authority. 115 So.2d at 645, 651.

As for when the litigation should occur, the Mississippi Supreme Court stated, "the chancellor should have judicially determined what force caused the walls to lean and twist. That was not a question for the appraisers to decide. If that damage was the result of the storm, then the appraisers should have been directed to estimate the value of the loss occasioned by the walls being damaged." *Id.* at 651. Thus, it would appear that the judicial determination is made first and then the appraisal should occur. This Court finds likewise that the better course is to let coverage and causation determinations be made and then if there remains a dispute over the "amount of the loss," Plaintiff would be entitled to an appraisal.

Finally, Plaintiff asserts that the language of the policy itself supports its position that the appraisal can take place first and then the legal disputes sorted out. Plaintiff points to the final sentence of the appraisal provision, which states, "If there is an appraisal, we will still retain our right to deny the claim."[4] The Court finds that this language does not have any bearing on when the appraisal process is triggered. There still has to first be a disagreement over the value of the property or amount of the loss. The Court can envision a situation where an appraisal could take place and the claim can still be denied. For example, the parties may indeed dispute the value of the property involved in the loss, such as when there is a total loss in a home fire or complete loss of a vehicle, but there is also a question regarding, say, a lapse in coverage for non-payment of

---

[4] Although other cases involve a similar appraisal provision, none of the cases cited in footnote 2 of Plaintiff's Reply stand for the proposition that the language regarding the insurer "retaining the right to deny the claim" should be interpreted to mean that the appraisal can, should, or must precede questions regarding coverage and/or causation.

premium or some other basis for the outright denial of a claim.  In that situation, an appraisal may proceed, but the insurer may still deny the claim. That is simply not the case here.

## III. CONCLUSION

For the reasons stated herein, the Plaintiff's Motion to Compel Appraisal [14] is DENIED without prejudice.

SO ORDERED AND ADJUDGED this 31st day of August 2022.

/s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE